MEMORANDUM **
Appellant Robin Anderson brought claims against Appellees CRST International, Inc., CRST Van Expedited, Inc. (collectively, “CRST”), and Eric Vegtel alleging sex discrimination under California’s Fair Housing and Employment Act (“FEHA”), Cal. Gov. Code § 12940 et seq., and Title VII of the Civil Rights Act, 42 U.S.C. § 2000e. She also brought a claim against CRST alleging retaliation under Title VII. 42 U.S.C. § 2000e. The district court granted summary judgment to Ap-pellees on all claims. We have jurisdiction under 28 U.S.C. § 1291, and we affirm in part and reverse in part.
We review a district court decision granting summary judgment de novo to determine whether, viewing the evidence in the light most favorable to the non-movant, there are any genuine issues of material fact. Surrell v. Cal. Water Serv. Co., 518 F.3d 1097, 1103 (9th Cir. 2008).
We first address the FEHA claims. The California Supreme Court has stated that “[ojrdinarily the statutes of a state have no force beyond its boundaries.... Although a state may have the power to legislate concerning the rights and obligations of its citizens with regard to transactions occurring beyond its boundaries, the presumption is that it did not intend to give its statutes any extraterritorial effect.” N. Alaska Salmon Co. v. Pillsbury, 174 Cal. 1, 162 P. 93, 93 (1916). This pre *526 sumption may be overcome if extraterritorial intent “is clearly expressed or reasonably ... inferred from the language of the act or from its purpose, subject matter or history.” Id. (citations and internal quotation marks omitted).
The text of the FEHA does not provide for its extraterritorial application, nor does its “purpose, subject matter or history” suggest that the legislature intended it to apply to extraterritorial transactions. Id. Thus, Anderson’s claims under the FEHA fail because they are based on conduct that occurred outside the state. We therefore affirm the district court’s grant of summary judgment to both Appellees on the FEHA claims.
Next, we must decide the Title VII claims. No Title VII cause of action exists against Vegtel because Anderson has sued him in his individual capacity. See Miller v. Maxwell’s Int’l Inc., 991 F.2d 583, 587 (9th Cir. 1993). Accordingly, we also affirm this aspect of the district court’s decision.
However, we reverse the district court’s grant of summary judgment to CRST on Anderson’s Title VII claim alleging hostile work environment. First, Anderson presents evidence from which a jury could determine both that Anderson subjectively perceived her work environment to be hostile and that a reasonable woman in Anderson’s position would have perceived the environment to be hostile. See Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); Ellison v. Brady, 924 F.2d 872, 879 (9th Cir. 1991). Indeed, such a perception could have been exacerbated by the fact that truck co-drivers spend significant amounts of time in close proximity with one another, and by the fact that this conduct occurred in a compressed time-frame, over the course of three weeks. See Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81-82, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (observing that determining whether workplace behavior constitutes harassment “requires careful consideration of the social context in which particular behavior occurs and is experienced by its target ... [and] often depends on a constellation of surrounding circumstances, expectations, and relationships”).
Second, Anderson presents sufficient evidence to create a material dispute as to whether CRST provided an effective remedy. An employer can escape liability for hostile work environment if it takes effective action once it “knows or should know of harassment.” Fuller v. City of Oakland, 47 F.3d 1522, 1528 (9th Cir. 1995); see also Brooks v. City of San Mateo, 229 F.3d 917, 924 (9th Cir. 2000) (explaining that the employer’s response is critical to a hostile-work-environment inquiry under Title VTI, “[wjhich is why [the harasser’s] conduct, while relevant, is not the primary focus of our inquiry”).[1] The effectiveness of such action is “measured by the twin purposes of ending the current harassment and deterring future harassment—by the same offender or others.” Fuller, 47 F.3d at *527 1528. Here, the harassment stopped because Anderson and Vegtel were separated. However, Anderson presents evidence that CRST never actually investigated her complaint and never informed Vegtel of the fact that he was prohibited from driving with female truck drivers in the future. Moreover, Anderson alleges that CRST failed to reassign her to a new truck or new routes after she and Vegtel were separated. We have held that an employer’s remedy is not effective even though it stops harassment if the remedy targets the victim and puts her in a worse position. See e.g., Ellison, 924 F.2d at 883 (finding ineffective remedy where employer transferred victim to less desirable location); Fuller, 47 F.3d at 1522 (finding ineffective remedy where employer offered to transfer victim to less desirable location). And although CRST insists that it attempted to reassign Anderson by sending her an email with a list of female drivers, the email provided no explanation of what the list was or how it should be used. On these facts, a jury could conclude that CRST’s remedy put Anderson in a worse position and was thus not effective.[2]
Because a reasonable jury could determine that Vegtel’s conduct was sufficiently severe and pervasive to create a hostile work environment, and that CRST failed to provide an effective remedy, we reverse the district court’s grant of summary judgment to CRST on the hostile work environment claim.
Finally, we reverse the district court’s grant of summary judgment to CRST on Anderson’s Title VII claim alleging retaliation. Under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), Anderson has made out a prima facie case of retaliation. Accordingly, the burden shifts to CRST to state a “legitimate, nondiscriminatory reason” for firing her. Id. at 802, 93 S.Ct. 1817. Although CRST argues that Anderson failed to report to work, Anderson insists that after filing her complaint she never received any work assignments, and there is no evidence to suggest that she was obligated to find her own route assignments from CRST. If Anderson did not abandon her job, then CRST has failed to proffer a non-retaliatory reason for her termination. Because a reasonable jury could conclude that CRST actually fired Anderson in retaliation for submitting a complaint against Vegtel, we reverse the district court’s grant of summary judgment to CRST on the retaliation claim.
For the above reasons, we reverse the district court’s grant of summary judgment as to CRST’s Title VII liability on the hostile work environment and retaliation claims, but affirm the judgment as to the state-law claims against both Appellees and affirm the judgment as to the Title VII claims against Vegtel. The case is remanded for further proceedings not inconsistent with our decision.
*528 AFFIRMED in part, REVERSED in part, and REMANDED.
The parties shall bear their own costs.

 This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

. Our colleague quotes Brooks out of context. Brooks holds that "an isolated incident of harassment by a co-worker will rarely ... give rise to a reasonable fear that sexual harassment has become a permanent feature of the employment relationship” on the theory that "only the employer can change the terms and conditions of employment.” 229 F.3d at 924. "[I]f the employer takes appropriate corrective action, it will not have rati-fled the conduct. In such circumstances, it becomes difficult to say that a reasonable victim would feel that the terms and conditions of her employment have changed as a result of the misconduct.” Id. Conversely, an employer may ratify harassing conduct by failing to take appropriate corrective action, in which case a victim may reasonably feel that the terms of her employment have changed.

. Contrary to our colleague's characterization, we do not suggest that CRST was expected to anticipate Vegtel’s harassing behavior or that it erred by failing to provide separate hotel rooms. Instead, our holding is based on CRST’s response to Vegtel’s conduct after the fact. We conclude only that Anderson has presented sufficient evidence to create a material dispute as to whether CRST’s remedy was "effective" or, instead, put Anderson in a worse position because CRST removed Anderson from her existing route and then failed to offer her a reassignment or return her calls to human resources. Moreover, our colleague’s statement that CRST “attempted to give Anderson new work assignments” is a conclusion that can only be reached by viewing the evidence in the light most favorable to CRST instead of, as our law requires, in the light most favorable to Anderson. Dissent 3.